United States District Court
District of Massachusetts

|                                        |   |                              |
|----------------------------------------|---|------------------------------|
| **NEW BALANCE ATHLETIC SHOE, INC.,**   ) |   |                              |
|                                        ) |   |                              |
| Plaintiff,                             ) |   |                              |
|                                        ) |   |                              |
| v.                                     ) | Civil Action No.               |
|                                        ) | 14-14715-NMG                   |
| **CONVERSE, INC.,**                    ) |   |                              |
|                                        ) |   |                              |
| Defendant.                             ) |   |                              |

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises from a trademark infringement dispute between plaintiff New Balance Athletic Shoe, Inc. ("New Balance") and defendant Converse, Inc. ("Converse").

Pending before the Court are plaintiff's motion to expedite proceedings and defendant's cross motion to stay. For the reasons that follow, plaintiff's motion will be denied and defendant's motion will be allowed.

## I.  Background

### A.  The products at issue

In 2001, New Balance acquired the athletic footwear brand PF Flyers. Those shoes are comprised of a canvas upper, toe bumper, toe cap and striped midsole. Defendant Converse sells the Chuck Taylor All Star athletic footwear brand that shares some common design elements with PF Flyers. Both brands have

-1-

been available in the United States for more than half a century.

In September, 2013, Converse was issued a trademark with U.S. Registration No. 4,398,753 ("the Converse Midsole Trademark"), which

> consists of the design of the two stripes on the midsole of the shoe, the design of the toe cap, the design of the multi-layered toe bumper featuring diamonds and line patterns, and the relative position of these elements to each other.

The Converse Midsole Trademark covers the design that defendant uses in connection with its Chuck Taylor All Star shoes.

### B. Ongoing action in the United States International Trade Commission ("ITC")

Converse filed a complaint with the ITC in October, 2014 seeking a general exclusion order against numerous alleged infringers of its Chuck Taylor All Star brand footwear ("the ITC action"). New Balance is not one of the named respondents, although it contends that the language of the proposed general exclusion order is broad enough to apply to PF Flyers as well. The ITC action, which will adjudicate the validity and enforceability of the Converse Midsole Trademark, is scheduled for trial in August, 2015.

In January, 2015, New Balance moved to intervene in the ITC action. That motion was allowed shortly thereafter.

C.  **Procedural history**

In December, 2014, plaintiff filed a complaint in this action seeking 1) a declaratory judgment of non-infringement of the Converse Midsole Trademark and 2) a cancellation of that mark.  In January, 2015, plaintiff filed a motion requesting that this Court expedite pretrial proceedings and schedule trial for July, 2015.  Defendant responded with a cross motion to stay the case.

II. **Plaintiff's motion to expedite and defendant's cross motion to stay**

A.  **Legal standard**

Every court is vested with the power

> to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).  This Court may therefore expedite or stay proceedings in its discretion through "the exercise of judgment, which must weigh competing interests and maintain an even balance." Id.

B.  **Application**

New Balance contends that justice requires the Court to provide an expedited pretrial and trial schedule.  It seeks a trial here before August, 2015 when trial in the ITC action is scheduled.

As an initial matter, plaintiff's argument that it cannot properly assert its rights to the PF Flyers brand in the ITC action as a non-party is now moot because New Balance has since successfully intervened in that case and will therefore be heard as a full participant.

Notwithstanding its successful intervention in the ITC action, New Balance seeks to expedite the case before this Court. It argues that this Court is a more effective forum in which to adjudicate its trademark invalidity and non-infringement contentions because, unlike the ITC, 1) this Court is empowered to cancel the Converse Midsole Trademark, 2) plaintiff can be afforded a jury trial and 3) the rules of evidence are more rigorous.

The Court does not, however, perceive these differences to prejudice the plaintiff unfairly. Although remedies such as money damages and cancellation of trademarks are unavailable at the ITC, the underlying facts and key legal issues of trademark infringement and validity can and will be decided in the pending ITC action. New Balance can adjudicate the validity of defendant's mark there and, if it prevails, move in this Court to cancel the registration.

Plaintiff has also failed to explain how the absence of a jury trial or the more relaxed hearsay rules in the ITC will adversely affect its ability to defend the PF Flyers brand. In

any event, the evidentiary burden of proving invalidity of the Converse Midsole Trademark remains on New Balance regardless of the forum. Plaintiff's purported need for urgency is belied by the fact that nearly two years has elapsed since Converse filed its trademark application. New Balance, in the meantime, has not challenged its validity. It did not submit an opposition to the registration of the Converse Midsole Trademark when it was first published for opposition in January, 2013, nor did it initiate a proceeding before the Trademark Trial and Appeal Board to cancel the mark after the registration was granted in September, 2013. As this Court has noted, "[w]ithout a risk of irreparable harm, expedited discovery is unwarranted." Momenta Pharm., Inc. v. Teva Pharm. Indus. Ltd., 765 F. Supp. 2d 87, 89 (D. Mass. 2011).

In addition to opposing plaintiff's motion, defendant has moved to stay the case pending a final decision in the ITC action. It contends that a stay is warranted because 1) it would conserve party and judicial resources by allowing the ITC investigation to narrow the issues before this case proceeds and 2) it would avoid potentially inconsistent judgments. The Court agrees.

Plaintiff has not demonstrated adequate cause for the Court to foreshorten its standard scheduling protocol or to engage in a headlong race with the ITC to address the same issues of

trademark infringement and validity.  The Court acknowledges that plaintiff is entitled to deference in its choice of forum because it filed the instant declaratory judgment action before it intervened in the ITC investigation.  Such deference does not, however, outweigh other factors that clearly favor a stay of this action.

Accordingly, in the interests of fairness and judicial economy, the Court will decline to expedite the trial in this case.  It will, instead, allow a stay on these proceedings pending resolution of the related, earlier-filed action in the ITC in which substantially the same issues are to be adjudicated.  It will also require the filing of semi-annual, joint status reports.

## ORDER

For the foregoing reasons,

1) plaintiff's motion to expedite (Docket No. 9) is **DENIED**;

2) defendant's motion to stay (Docket No. 18) is **ALLOWED**. The stay shall remain in effect pending resolution of the ITC action, Inv. No. 337-TA-936; and

3) the parties shall file joint status reports on or before August 31, 2015, and at six-month intervals thereafter.

**So ordered.**

                                            /s/ Nathaniel M. Gorton
                                            Nathaniel M. Gorton
                                            United States District Judge

Dated February 18, 2015